THE FIRST NATIONAL BANK OF DAGSBORO *v*. HARRY V. LOFLAND and RAYMOND W. LOFLAND, administrators of WILLARD E. LOFLAND, deceased.

(*June* 30, 1928.)

RICE and RODNEY, J. J., sitting.

*James M. Tunnell* for plaintiff.

*Charles W. Cullen* for defendants.

Superior Court for Sussex County, April Term, 1928. No. 2, February Term, 1928.

RODNEY, J., delivering the opinion of the court:

It is admitted by the plaintiff that, as a general rule, a garnishment cannot be maintained against a personal representative such as an executor or administrator in such a way as to permit an attachment to interfere with, or create priorities with regard to, the estate which the personal representative is administering. *Lyons' Adm'rs v. Houston's Ex'r*, 2 *Harr.* 349. It is contended by the plaintiff, however, that when the estate has been settled and an amount of money remains in the hands of the representatives with no further duty to perform than to pay such sum in distributive shares to the parties entitled, that in such event a garnishment will lie in favor of a creditor of a person entitled to such distributive share so that such distributive share may be attached in the hands of the administrator. Such must be conceded to be the law of this state. *Fitchett v. Dolbee*, 3 *Harr.* 267. See note in 47 *L. R. A.* 345. Many of the Delaware cases involving garnishment

are collected in *Farmers' Bank v. Ball*, 2 *Penn.* 374, 46 *A.* 751, and *In re Shelley*, 1 *Boyce* 10-14, 73 *A.* 796.

From these principles, the plaintiff, by analogy, seeks to support his attachment. He plausibly argues that the widow's dower has, upon her application been waived as to metes and bounds, and she elected to take as her dower an equivalent share of the proceeds of sale; that upon her petition, and pursuant to the Act of May 4, 1927, *vol.* 35, *Laws of Delaware, p.* 580, her life interest of dower has been appraised at its present money value, amounting, exclusive of costs, to $981.42; that the sum has been directed by the express order of the Orphans' Court to be paid by the administrators to the widow and can be used for no other purpose and is subject to no other deduction. The plaintiff then argues that this fund in the hands of the administrators payable solely to the widow is subject to the same rights and liabilities as a distributive share of an estate after complete settlement and ascertainment of the amounts due on distributive shares and is, therefore, subject to an attachment at the suit of a creditor of the party entitled to the fund, viz., the widow.

The inherent error in this reasoning is not at first apparent, but is manifested by a series of logical conclusions.

In *Netter Bros. v. Stoeckle*, 4 *Penn.* 345, 349, 56 *A.* 604, 605, the court said (transposing the paragraphs):

"The garnishee stands in the same position that he would have been in had the suit been brought by his own creditor. The fact that a garnishment process has been served upon him places him in no worse position and under no greater liability than he would have been had an action at law been brought against him by the principal defendant to whom he was indebted, or whose property he had in his possession. * * *

"It is the general rule that the right of the attaching creditor to recover against the garnishee depends upon the subsisting rights between the garnishee and the debtor in the attachment; and the test of the garnishee's liability is that he has funds, property or credits in his hands belonging to the debtor, for which the latter would have a right to sue."

See, also, *Brown v. H. & F. Brewery Co.*, 1 *Penn.* 195, 40 *A.* 60.

It seems almost uniformly to be the law that in order to sustain a garnishment there must be a liability of the garnishee to

the judgment debtor and that this liability must be of such a character as will support an action at law.

This being the law, it, therefore, becomes material and of prime importance to determine whether the widow has a right of action at law to recover from the administrators the appraised value of her dower interest directed to be paid to her by order of the Orphans' Court.

If she has and the administrators would be liable to her in such action at law, then, in so far as that feature of the matter is concerned, the garnishment would seem to be good; if, on the other hand, the widow has no right of action at law against the administrators for her appraised dower interest then the garnishment cannot be maintained. It is at this point that the analogy fails between this case and an attachment or garnishment laid in the hands of an administrator for a distributive share after the final settlement of an estate. It seems clear that at common law no ordinary suit at law such as assumpsit, debt, detinue or the like would lie against a personal representative to recover either a general legacy or a distributive share. The present right to recover in such cases in a court of law, as distinguished from probate or equity proceedings, has been expressly created by statute.

The following authorities seem clearly to bear out this principle: *Decks v. Strutt*, 5 *Term Rep.* 690; 101 *Eng. Rep.* 384; *Jones v. Tanner*, 7 *B. & C.* (14 *E. C. L.*) 542; 108 *Eng. Rep.* 825; *Amos v. Campbell*, 9 *Fla.* 187; *Ordinary v. Smith*, 15 *N. J. Law* 98; *Hunt v. Mayberry*, 29 *N. J. Law* 403; *Frey v. Demarest*, 16 *N. J. Eq.* 236; *Howard v. Brown*, 11 *Vt.* 363; *Holmes v. Hall*, 14 *N. C.* (3 *Dev.*) 98; 2 *Wms. Ex'rs* (5th *Am. Ed.*) 1747; *Walker v. Caldwell*, 8 *Del. Ch.* 91, 67 *A.* 1085; *Wilson v. Wilson*, 3 *Bin.* (*Pa.*) 557.

This was the state of the law when the first Delaware Colonial Act of March 31, 1764 (*vol.* 1, *page* 408) was passed. This act recited:

"Whereas, the proceedings in the Court of Chancery, within this government, for the recovery of legacies are tedious and expensive. * * * "

And then provided that suits at law might be brought in debt, detinue or account render for the recovery of such legacies.

The first statutory authority for the recovery at law of a distributive share was by Act of February 16, 1829 (7 *Del. Laws* 465-483; *Code* 1829, *p.* 228). This statute was, with slight modifications of language, re-enacted in the *Revised Code of* 1852 and in the *Amended Code of* 1893 as *section* 40, *c.* 89, *p.* 680. It now appears as *section* 3397 *of the Revised Code of* 1915, as follows:

"An action of assumpsit may be maintained against an executor, or administrator, for a legacy, or distributive share; and assets in his hands to pay a legacy, shall create a legal liability and raise a consequent promise to pay it. * * * There shall be a legal liability to pay a distributive share, and a consequent implied promise."

It was solely by virtue of the foregoing statutory provisions that the court in *Booth v. Booth's Executor, 2 Harr.* 54, held that a suit would lie in assumpsit against an executor for a distributive share. The foregoing statute, with the right of action and legal liability created by it, was the sole basis assigned by the court in *Fitchett v. Dolbee, 3 Harr.* 267, for holding that a distributive share might be attached in the hands of an administrator after final account passed and distributive shares ascertained.

In *Plunkett v. LeHurray, 4 Harr.* 436, the court said:

" * * * The case of a distributive balance in the hands of an administrator, after the estate is fully settled, stands on special grounds, under the provisions of the act of assembly."

This case held that an executor holding property in trust could not be summoned as garnishee of the *cestui que* trust.

Of course the appraised value of the dower interest being a particular statutory method of arriving at the amount due the widow in right of dower cannot be considered as a "distributive share" for the dower interest is a particular fund set aside for that purpose alone and arrived at by a mathematical precision, regardless of debts. A distributive share is the balance in the hands of the administrator after the payment of all just claims and demands, being the balance then due for distribution.

The right of the party entitled to sue in an action at law for a distributive share and the consequent liability of such distributive share to attachment arises solely by virtue of the statutory provi-

sions. There can be no analogy between such proceedings and the attachment of an appraised amount of a widow's dower in the hands of an administrator for the reason that no statute authorizes any proceedings at law for the recovery of such dower interest.

██ ██ In view of the foregoing conclusion, it is unnecessary to consider whether the administrators hold the appraised dower interest in the capacity as administrators or whether in fact they hold it as *quasi* trustees by order of the Orphans' Court. It is cer-certain that the appraised dower interest is not subject to adminis-tration expenses or fees nor accounted for in the administrator's settlement before the Register of Wills. The dower interest was not one over which the intestate had an arbitrary control and did not become vested until his death. This matter is only mentioned that it may not be considered as an assumed fact that the admin-istrators held the appraised dower interest of the widow in their official custody as administrators of Willard E. Lofland.

Being of the opinion that the sum of money in the hands of the administrators and due to the widow for her dower is not sub-ject to the attachment issued in this case, judgment is given ac-cording to the agreed statement of facts, for the defendants.