PAUL THEODORE CHEFF, Defendant Below,

Appeal of PAUL THEODORE CHEFF, WILLIAM P. DELONG and CHARLES F. LATIMER, Special Administrators of the Estate of Katherine Nystrom Cheff, appearing specially, Movants Below, Appellants,

*vs.*

ATHLONE INDUSTRIES, INC., Plaintiff Below, Appellee.

*Supreme Court, On Appeal, July 19, 1967.*

David A. Drexler, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant below and movants below, appellants.

Louis J. Finger and Robert H. Richards, III, of Richards, Layton & Finger, Wilmington, for plaintiff below, appellee.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

HERRMANN, Justice: The question before us is whether a residuary legatee of an unsettled estate has an interest, subject to sequestration under 10 Del.C. § 366,[1] in shares of corporate stock constituting part of the assets of the residuary estate.

---

1. 10 Del.C. § 366(a) provides in part:

 "§ 366. Compelling appearance of non-resident defendant

 "(a) If it appears in any complaint filed in the Court of Chancery that the defendant * * * is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant * * * to appear by a day certain to be designated. * * * The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. Any defendant whose property shall have been so seized and who shall have entered a general appearance in the cause may, upon notice to the plaintiff, petition the Court for an order releasing such property or any part thereof from the seizure. The Court shall release such property unless the plaintiff shall satisfy the Court that because of other circumstances there is a reasonable possibility that such release may render it substantially less likely that plaintiff will obtain satisfaction of any judgment secured. If such petition shall not be granted, or if no such petition shall be filed, such property shall remain subject to seizure and may be sold to satisfy any judgment entered in the cause. The Court may at any time release such property or any part thereof upon the giving of sufficient security."

## I.

There is no dispute about the material facts: Athlone Industries, Inc., a Delaware corporation (hereinafter "Athlone"), brought this action against Paul Theodore Cheff for wrongs allegedly committed by him as its chief executive officer. Cheff was a resident of Michigan. In order to subject Cheff to the jurisdiction of the Chancery Court, Athlone invoked § 366 and obtained a sequestration order authorizing the seizure of all shares of the stock of Athlone and Hazelbank United Interests, Inc., another Delaware corporation (hereinafter "Hazelbank"), "registered and standing in the name of the defendant, or in the name of Katherine Nystrom Cheff, or in or to which the defendant may have or hold any right, title or interest * * * to compel the appearance of the said defendant * * *." In response to the sequestrator's notice, Athlone reported as affected by the order of sequestration 5,004 shares of its stock registered in the name of Paul Theodore Cheff and 15,804 shares registered in the name of Katherine Nystrom Cheff. Hazelbank reported held under the order 7024.5579 shares of its stock registered in the name of Katherine Nystrom Cheff.

Katherine, the wife of Paul, died a few months before this action was commenced. On September 15, 1966, the probate of her will was commenced in Michigan. Cheff and two others were appointed special administrators of her estate, pending admission of the will to probate. The will had not yet been proved at the time this action was commenced and the order of sequestration entered on October 17, 1966.[2]

The will set forth the following plan of distribution: (1) all real property and tangible personalty to Cheff; (2) cash to four named individuals; (3) the residuary estate divided into two parts, the Marital Portion and the Residual Portion—the Marital Portion to Cheff and the Residual Portion in trust for Cheff for life, with remainder to named individuals and charitable organizations. The will authorized the executors to distribute "in cash or in kind, or partly in cash and partly in kind in their discretion." The will contained no specific disposition of the stock of Athlone or Hazelbank registered in the name of the testatrix. There is no indication that Mrs. Cheff held anything less than complete legal and equitable ownership in the shares at the time of her death.

---

2. The special administrators became the executors of the estate on February 10, 1967 when the will was admitted to probate.

The defendant Cheff entered a general appearance in this cause on November 17, 1966, and moved to vacate the entire sequestration. Athlone opposed; whereupon the administrators of Mrs. Cheff's estate appeared specially and moved for the release from sequestration of the stock registered in her name. From the denial of that motion, the administrators appeal.

## II.

The law of Michigan determines the nature and extent of Cheff's right, title and interest in the stock constituting part of his wife's residuary estate. *Mechanics Bank v. Yale University,* 111 Conn. 452, 150 *A.* 526, 530 (1930). The law of Delaware controls the question of whether such interest may be sequestered under 10 *Del.C.* § 366.

Athlone contends that Cheff had an equitable or beneficial interest in the stock under the law of Michigan, citing *Schueler v. Althouse,* 365 *Mich.* 690, 113 *N.W.2d* 921 (1962); that such interest may be sequestered under the law of Delaware, citing *Blumenthal v. Blumenthal,* 28 *Del.Ch.* 1, 35 *A.2d* 831, aff'd 28 *Del.Ch.* 448, 59 *A.2d* 216 (1945) and *Greene v. Johnston,* 34 *Del.Ch.* 115, 99 *A.2d* 627, 42 *A.L.R.2d* 906 (1953). The Chancery Court so held. We are unable to agree.

It appears to be the rule, generally prevailing in the absence of statute, that a residuary legatee has no right, title or interest in specific assets of the residue of an unsettled estate. While he may have a beneficial interest in the residuary estate as a whole and in his distributive share thereof, he has no direct beneficial interest prior to settlement in the specific assets of which the residue is constituted. This rule rests upon the obvious ground that until the estate is settled, and all legacies, debts, and taxes paid, there can be no certainty as to the constituency of the residue. See *Stayton v. Delaware Trust Company,* *Del.Ch.,* 206 *A.2d* 509 (1965). The crux of the rule is that there is no such thing as a residue until the estate has been fully administered and the residue ascertained.

No Michigan decision or statute has come to our attention indicating that any but the general rule prevails in that jurisdiction. Indeed, the contrary appears. In *Marvin v. Bowlby,* 142 *Mich.* 245,

105 *N.W.* 751, 755, 4 *L.R.A.,N.S.,* 189 (1905), the Supreme Court of Michigan stated that an heir has no "title or claim to personal estate except a distributive share in the surplus after payment of debts and expenses of administration." See also *Michigan Trust Co. v. City of Grand Rapids,* 262 *Mich.* 547, 247 *N.W.* 744, 746, 89 *A.L.R.* 840 (1933).

The case of *Schueler v. Althouse, supra,* upon which Athlone relies, does not hold to the contrary. That case involved a devisee of real property who was held to have an interest therein such as permitted him or his creditors to bring an action for the recovery of the property alleged to have been conveyed to another by forged deed purporting to be the deed of the testator. The *Schueler* case is not in point, especially because fraud was there involved and because Michigan distinguishes between realty and personalty with respect to the rights and interests of heirs. *Marvin v. Bowlby, supra.*

■ We conclude that at the time of the sequestration, under the law of Michigan, Cheff had no direct interest, equitable or otherwise, in the specific assets of the residuary estate, including the Athlone and Hazelbank stock sought to be sequestered.

### III.

■ Having thus determined the extent of Cheff's interest in the stock registered in his wife's name, the question then becomes whether, under Delaware law, such stock was properly sequestered as Cheff's property. We think not.

The entity of Mrs. Cheff's estate may not be so disregarded. In the absence of fraud, and prior to the settlement of the estate, a creditor of Cheff could not look directly to specific assets of the residuary estate in satisfaction of his claim against Cheff. *First Nat. Bank of Dagsboro v. Lofland,* 4 *W.W.Harr.* 97, 143 *A.* 407 (1928); *Stayton v. Delaware Trust Company, supra; Union Properties, Inc. v. Patterson,* 143 *Ohio St.* 192, 54 *N.E.2d* 668 (1944); Annotation, 123 *A.L.R.* 1293, *et seq.* The shares could not be sold under § 366 to satisfy the demand of the plaintiff in this case; as has been seen, Cheff held no direct interest therein subject to sale. It follows, in our opinion that Cheff had no interest, subject to sequestration under

§ 366, in the stock registered in the name of Katherine Nystrom Cheff. Compare *Buechner v. Farbenfabriken Bayer Aktiengesell*, 38 *Del.Ch.* 490, 154 *A.2d* 684 (1959), *aff'g* 38 *Del.Ch.* 329, 151 *A.2d* 125 (1958). Here, as there, the seizure was not of property in which the defendant had an equitable interest; rather, it was the property of an entity in which the defendant had an equitable interest. The difference is determinative.

 Athlone contends that, under the *Schueler* case, Cheff had an interest in the stock reachable by a creditor's bill; that, by virtue of the *Greene* case, it follows that he had an interest in the stock subject to sequestration under the law of Delaware. We cannot agree. In neither *Schueler* nor *Greene* did the Court contemplate a creditor's bill that would interfere with the orderly administration of a decedent's estate by another tribunal. The rule is that creditor's relief in equity, as in law, will be granted only to the extent that it will not disturb property deemed to be in *custodia legis* because part of an estate in the process of administration. 21 *Am.Jur.2d "Creditors' Bills"* §§ 36, 39, 40; *Craig v. Wayne Circuit Judge*, 192 *Mich.* 106, 158 *N.W.* 15 (1916) ; compare *Hudson v. Wilber, Circuit Judge,* 114 *Mich.* 116 72 *N.W.* 162, 47 *L.R.A.* 345 (1897) ; *Walden v. Crego's Estate,* 288 *Mich.* 564, 285 *N.W.* 457 (1939) ; *First Nat. Bank v. Lofland, supra; Annotations,* 59 *A.L.R.* 768 *et seq.;* 123 *A.L.R.* 1293, 1314. Under that guideline, the extent of relief available by creditor's bill in the instant case would be the right to require that money or other assets in the hands of the executors be paid or delivered to the judgment creditor instead of Cheff at the time it would be payable or deliverable to the latter. *Craig v. Wayne Circuit Judge, supra; Union Properties, Inc. v. Patterson, supra.* Obviously, such right is not comparable to the right sought by Athlone in this sequestration proceeding.

Athlone's reliance upon *Blumenthal v. Blumenthal, supra,* is misplaced. That case involved the beneficial interest of the transferor in certain stock assigned without consideration for the purpose of defrauding the transferor's creditors. The Court held that as between the transferor and a defrauded creditor, the transferor had equitable property rights in the stock subject to seizure under the sequestration statute. That is not this case; here there is no indication of fraud. *Blumenthal* is not authority for the right of Athlone to sequester the stock in Mrs. Cheff's residuary estate as the property of the defendant.

\* \* \*

For the reasons stated, we hold that the attempted seizure of the stock registered in the name of Katherine Nystrom Cheff was ineffectual and that the sequestration thereof must be vacated. The judgment below is reversed and the cause remanded for further proceedings consistent herewith.